**IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **In re: Gayla B. Minor** | **Case No. 13-32664-KRH** |
| **Debtor** | **Chapter 13** |

### EXHIBIT TO MOTION FOR AUTHORITY TO MODIFY EXISTING MORTGAGE

Pursuant to Richmond Division General Order 12-1, Debtor, by counsel, hereby submits the attached fully executed Loan Modification Agreement as an Exhibit to the previously filed Motion for Authority to Modify Existing Mortgage.

    Respectfully submitted,

    GAYLA B. MINOR
    By Counsel:

    <u>/s/ Amanda E. DeBerry</u>
    Amanda E. DeBerry (VSB# 83805)
    Boleman Law Firm, P.C.
    P. O. Box 11588
    Richmond, Virginia 23230-1588
    Telephone (804) 358-9900
    Counsel for Debtor

After Recording Return To:
NATIONSTAR MORTGAGE LLC
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

This Document Prepared By:
Heath Harris
NATIONSTAR MORTGAGE LLC
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

Parcel ID Number: N000-1112/008

Current UPB: $98,981.38
Certified Existing Debt: $105,727.02
New Money: $6,745.64

_____ [Space Above This Line For Recording Data] _____

Original Recording Date: January 14, 2008              Loan No: ▇▇▇▇8049
Original Loan Amount: $108,000.00                      Investor Loan No: ▇▇▇▇5456
Current UPB: $98,981.38
Certified Existing Debt: $105,727.02
New Money: $6,745.64
New Loan Amount: $105,727.02
Interest only, Current UPB is being reduced to the amount of
the Certified Existing Debt.

# LOAN MODIFICATION AGREEMENT
(Providing For Fixed Interest Rate)
Modification of Trust

THIS LOAN MODIFICATION IS EXEMPT FROM THE TAXES IMPOSED BY VIRGINIA CODE §58.1-803, EXCEPT THE AMOUNT IDENTIFIED AS NEW MONEY THAT SHALL BE TAXED PURSUANT TO VIRGINIA CODE §58.1-803(c), OTHERWISE ALL OTHER AMOUNTS ARE EXEMPT UNDER VIRGINIA CODE §58.1-809.

This Loan Modification Agreement ("Agreement"), made this 24th day of March, 2015, between **GAYLA MINOR** ("Borrower") and **NATIONSTAR MORTGAGE LLC**, whose address is 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019 ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated **December 11, 2007** and recorded in Book/Liber N/A, Page N/A, Instrument No: 080001096, of the Official Records (Name of Records) of

LOAN MODIFICATION AGREEMENT — Single Family—Fannie Mae Uniform Instrument         Form 3179 1/01 (rev. 4/14)
8300a 08/14                                                                        (page 1 of 5)

**CITY OF RICHMOND, VA (County and State, or other Jurisdiction)** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

**1307 WENTBRIDGE ROAD, RICHMOND, VA 23227,**
(Property Address)

the real property described being set forth as follows:
**See Exhibit "A" attached hereto and made a part hereof;**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of **April 1, 2015**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$105,727.02**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of **4.250%**, from **April 1, 2015**. Borrower promises to make monthly payments of principal and interest of U.S. **$458.45**, beginning on the **1st** day of **May, 2015**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of **4.250%** will remain in effect until principal and interest are paid in full. If on **April 1, 2055** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

   (b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a)

above.

5. Borrower understands and agrees that:

   (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

   (c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

   (d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

   (e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

6. In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

7. By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

8. This Agreement modifies an obligation secured by an existing security instrument recorded in CITY OF RICHMOND, VA, upon which all recordation taxes have been paid. As of the date of this agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $98,981.38. The principal balance secured by the existing security instrument as a result of this Agreement is $105,727.02, which amount represents the excess of the unpaid principal balance of this original obligation.

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
GAYLA MINOR  -Borrower

_____ [Space Below This Line For Acknowledgments] _____

State of Virginia

County of __City of Richmond__

The foregoing instrument was acknowledged before me, this __1st__ day of __April__, 2015

by **GAYLA MINOR**.

_____
(Signature of person taking acknowledgment)

__Notary__
(Title or rank)

__357954__
(Serial number, if any)

My commission expires the __31st__ day of __July__, 2017



LOAN MODIFICATION AGREEMENT — Single Family—Fannie Mae Uniform Instrument          Form 3179 1/01 (rev. 4/14)
8300a 08/14                                                                          (page 4 of 5)

**NATIONSTAR MORTGAGE LLC**

By: _____A͟n͟a͟ ͟H͟a͟l͟i͟f͟a͟_____(Seal) - Lender
Name: _____Azra Habibija_____
Title: _____Assistant Secretary_____

_____4\15\15_____
Date of Lender's Signature

_____ [Space Below This Line For Acknowledgments] _____

The State of TX

County of __Dallas__

Before me __Grant Wooldridge__ Notary Public _____ (name/title of officer) on this day personally appeared

__Azra Habibija__, the __Assistant Secretary__ of

__Nationstar Mortgage LLC__,

known to me (or proved to me on the oath of _____ or through _____
~~(description~~ of identity card or other document)) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this __15th__ day of __April__, A.D. __2015__.

_____
Signature of Officer   Notary Public

SEP 26 2018    Title of Officer
My Commission expires : _____

> GRANT WOOLDRIDGE
> Notary Public, State of Texas
> My Commission Expires
> September 26, 2018



LOAN MODIFICATION AGREEMENT — Single Family—Fannie Mae Uniform Instrument        Form 3179 1/01 (rev. 4/14)
8300a 08/14                                                                      (page 5 of 5)

Loan No.: ████████049
Borrower: GAYLA MINOR

# AGREEMENT TO MAINTAIN ESCROW ACCOUNT

WHEREAS, GAYLA MINOR ("Borrower") desires NATIONSTAR MORTGAGE LLC ("Lender") to collect payments from Borrower to be held by Lender for the payment of certain sums due in connection with Borrower's Note and Security Instrument, dated December 11, 2007, (hereinafter referred to as "Note" and "Security Instrument" respectively) currently held by Lender;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants contained in this Agreement ("Agreement"), Borrower agrees to pay Lender, on the day Periodic Payments are due under the Note, until the Note is paid in full, or the Escrow Account is otherwise terminated pursuant to this Agreement or in accordance with applicable law, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Security Instrument; and (d) Mortgage Insurance Premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums. These items are called "Escrow Items." In the event that Borrower receives bills, assessments, invoices, or other requests for payment of Escrow Items, Borrower shall promptly furnish to Lender all such notices.

Borrower shall pay Lender the Funds for Escrow Items unless this Agreement is terminated either by Lender, or pursuant to applicable law. In the event of termination, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. In the event Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may pay such amount in accordance with the terms of the Note and Security Instrument and Borrower shall then be obligated to repay Lender any such amount. Additionally, if Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may, in accordance with applicable law, require Borrower to maintain an Escrow Account.

Borrower agrees to make an initial payment of Funds to establish the escrow account, which amount shall be based on an estimate of the amount and date of expenditures for future Escrow Items, or otherwise in accordance with the Real Estate Settlement Procedures Act ("RESPA"). The estimate of expenditures of future Escrow Items shall be made based on current data available to Lender. Borrower acknowledges that the actual payments of Escrow Items may vary from the estimated amounts.

Lender will collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time period specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless agreed to in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA. If there is a deficiency



Loan No. ████8049
Borrower: GAYLA MINOR

of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument or termination of this Agreement, Lender shall promptly refund to Borrower any Funds held by Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement to Maintain Escrow Account.



_____    4-1-2015
Borrower - GAYLA MINOR                Date


_____    _____
Borrower -                            Date


_____    _____
Borrower -                            Date


_____    _____
Borrower -                            Date


AGREEMENT TO ESTABLISH ESCROW ACCOUNT 11/12                    (Page 2 of 2)

# Exhibit "A"

Loan Number: ████8049

Property Address: **1307 WENTBRIDGE ROAD, RICHMOND, VA 23227**

Legal Description:
ALL THAT CERTAIN LOT, PIECE OR PARCEL OF LAND, LYING AND BEING IN THE CITY OF RICHMOND, VIRGINIA, AND MORE FULLY DESCRIBED AS FOLLOWS: COMMENCING AT A POINT IN THE WESTERN LINE OF WENTBRIDGE ROAD, SAID POINT BEING 279.20 FEET FROM THE NORTH LINE OF ROBIN HOOD ROAD; THENCE SOUTH 55 DEGREES 52 MINUTES 01 SECOND WEST DISTANT 130.01 FEET; THENCE NORTH 56 DEGREES 22 MINUTES 43 SECONDS WEST DISTANT 93.62 FEET; THENCE NORTH 60 DEGREES 40 MINUTES 49 SECONDS EAST 169.16 FEET TO THE WESTERN LINE OF WENTBRIDGE ROAD; THENCE ALONG THE WESTERN LINE OF WENTBRIDGE ROAD A DISTANCE OF 70 FEET TO THE POINT OF BEGINNING; AND BEING PART OF LOT 8, BLOCK N, SECTION D, SHERWOOD PARK, RECORDED IN DEED BOOK 546-C, PAGE 458, CLERKS OFFICE, CHANCERY COURT OF THE CITY OF RICHMOND, VIRGINIA, AND AS SHOWN ON A PLAT MADE BY GEORGE M. STEPHENS, JR. CERTIFIED LAND SURVEYOR, DATED MARCH 25, 1971, A COPY OF WHICH IS RECORDED IN DEED BOOK 670-C, PAGE 420.




Loan No.: ▮▮▮▮8049
Borrower: GAYLA MINOR

## COMPLIANCE AGREEMENT

In consideration of Nationstar Mortgage LLC ("Lender") extending funds (the "Loan"), in connection with the closing of the property located at 1307 WENTBRIDGE ROAD, RICHMOND, VA 23227 (the "Closing"), the undersigned ("Borrower") agrees, upon request of Lender, its successors or assigns ("Note Holder"), or upon request of any person acting on behalf of Note Holder, to fully cooperate with Note Holder or such person to correct any inaccurate term or provision of, mistake in, or omission from any document associated with the Closing. Borrower further agrees to execute such documents or take such action as Note Holder or such person acting on behalf of Note Holder reasonably may deem necessary (including without limitation the correction of any such inaccuracy, mistake, or omission) as will enable Note Holder to sell, convey, seek guaranty of, or market the Loan to any entity, including without limitation an investor, the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Department of Housing and Urban Development, the Department of Veterans Affairs, or any bonding authority.

Borrower further agrees to comply with any such request within a reasonable period of time as specified by Note Holder or by such person acting on behalf of Note Holder. Failure to comply shall constitute default under the Note and Security Instrument that evidence the Loan, and Note Holder may pursue its available remedies.

BY SIGNING BELOW BORROWER ACKNOWLEDGES THAT BORROWER FULLY UNDERSTANDS THIS COMPLIANCE AGREEMENT OR OTHERWISE HAS SOUGHT THE ADVISE OF COUNSEL.

_/s/ Gayla Minor_      4-1-2015
Borrower - GAYLA MINOR      Date

_____      _____
Borrower -      Date




COMPLIANCE AGREEMENT 11/12      (Page 1 of 1)